[S.F. No. 25045. Apr. 7, 1988.]

CHRISTINE M. JOLLY, Plaintiff and Appellant, v.
ELI LILLY AND COMPANY et al., Defendants and Respondents.

**1104**

**COUNSEL**

Patricia J. Van Horn and Crist, Griffiths, Bryant, Schulz, Biorn & Clohan for Plaintiff and Appellant.

Robert H. Sulnick as Amicus Curiae on behalf of Plaintiff and Appellant.

Richard J. Heafey, Peter W. Davis, James C. Martin, Crosby, Heafey, Roach & May, Richard T. Davis, Jr., Robert D. Phillips, Jr., Robert H. Roe, Adams, Duque & Hazeltine, Robert L. Rickson, Ralph A. Campillo, Robert L. Kaufman, Roxanne M. Wilson, Joseph R. Zamora, Haight,

Dickson, Brown & Bonesteel, Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne, Michael F. Healy, Bruce A. Edwards, Frederick D. Baker, Gudmundson, Siggins & Stone, Richard J. Siggins, William S. Ginsburg, Tarkington, O'Connor & O'Neill, Tarkington, Carey, O'Connor & O'Neill, John D. O'Connor, Patrick J. Hogan, Gibson, Dunn & Crutcher, G. Edward Fitzgerald and Eric McCurdy for Defendants and Respondents.

---

**OPINION**

**PANELLI, J.**—This case presents the following questions: whether a plaintiff, in a suit for personal injury caused by a defective drug, who is unaware of any specific facts establishing wrongful conduct on the part of any drug manufacturer, may delay bringing an action until she discovers such facts; whether a claim, otherwise barred by the statute of limitations, can be revived due to our decision in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061], in which we held that a plaintiff who is unable to identify the particular manufacturer of a fungible drug that caused injury to her can state a claim by joining defendants who manufactured a substantial percentage of the market share of the allegedly defective drug; and whether the filing of the class action in *Sindell, supra,* tolled the statute of limitations for members of the putative class until the class was denied certification. We answer these questions in the negative and so conclude that the suit is time-barred.

### I. *Facts*

Plaintiff Jolly was born in 1951. In 1972, she first learned that while she was *in utero* her mother had ingested the synthetic drug estrogen diethylstilbestrol (DES) for the prevention of miscarriage. Plaintiff was told in 1972 that DES daughters could suffer injuries. Therefore, she went to a DES clinic at the UCLA Medical Center for a checkup. She was diagnosed as having adenosis, a precancerous condition that required careful monitoring. In 1976, she had an abnormal pap smear and underwent a dilation and curettage, a surgical procedure to remove abnormal tissue. In 1978, plaintiff underwent a complete hysterectomy and a partial vaginectomy in order to remove malignancy. As of 1972, plaintiff was aware, or at least suspected, that her condition was a result of her mother's ingestion of DES during pregnancy.

Starting in 1972, plaintiff attempted to discover the manufacturer of the DES ingested by her mother. Efforts were increased in 1976 and 1978 when plaintiff's condition became acute. Unfortunately, the doctor who

prescribed the drug had died,[1] and plaintiff was unable to locate his records. Although the dispensing pharmacist did remember filling the DES prescription, he did not recall or have records pertaining to the specific brand used. This was not unusual since DES was a fungible drug, that is, hundreds of pharmaceutical companies made DES from a single agreed formula. The hospital where plaintiff was born was of no assistance because plaintiff's mother did not use DES while there.

At least as of 1978, plaintiff was aware of the pendency of one or more DES suits alleging that DES manufacturers were liable to those injured due to their failure to test or failure to warn. Although she believed that DES had caused her injuries and that those who marketed DES had wrongfully marketed a defective product, there is no conclusive evidence in the record to show that a reasonable investigation by plaintiff in 1978 would have disclosed specific proven facts that would establish any wrongful conduct on the part of a DES drug manufacturer. In fact, even today defendants allege that DES is not defective, but for purposes of summary judgment have admitted the allegation of some defectiveness.

Further, plaintiff believed that she had no cause of action if she could not identify the particular manufacturer of the drug her mother took during pregnancy. Because her efforts to identify that manufacturer were unsuccessful, plaintiff did not file suit.

In March 1980, we decided *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588, and held that if a plaintiff could not identify the precise drug manufacturer of the ingested DES, she could state a cause of action against the DES manufacturers of a substantial percentage of the market share of the drug. Defendants would be liable, assuming the remaining material allegations in the complaint were proven, unless they could disprove their involvement. Almost one year after *Sindell,* plaintiff Jolly brought this action.

Defendants moved for summary judgment, asserting that the action was barred by Code of Civil Procedure section 340, subdivision (3),[2] setting forth a one-year statute of limitations period for an action "for injury . . . caused by the wrongful act or neglect of another." Although conceding the applicability of the one-year statutory period, plaintiff denied that the suit was time-barred. She asserted that the statute did not commence until she

---

[1] The doctor died prior to 1978. The record does not set forth the exact date or year of his death.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

learned of the *Sindell* decision, because only then did she realize that she would be able to successfully bring her claim.

Plaintiff maintained that *Sindell* created a new cause of action by redefining "causation." Prior to *Sindell,* she claimed, only the specific manufacturer of the pills that were ingested was deemed to have "caused" the injury. After *Sindell,* according to plaintiff, it was the generic drug DES that "caused" the harm, and therefore all DES manufacturers were tortfeasors.

The trial court granted defendants' motion and entered judgment in their favor. The Court of Appeal reversed, relying on its earlier decision in *Kensinger* v. *Abbott Laboratories* (1985) 171 Cal.App.3d 376 [217 Cal.Rptr. 313]. The Court of Appeal did not address Jolly's main argument, that the statute could not begin to run until after our decision in *Sindell, supra,* 26 Cal.3d 588, except by way of a footnote declining to adopt her position.[3] We granted defendants Eli Lilly and Company, Rexall Drug Company, and E.R. Squibb and Sons, Inc.'s subsequent petition for review.

## II. *The Kensinger Decision*

As previously noted, both sides agree that the one-year limitations period of section 340, subdivision (3) applies to this case. ■ Both sides also agree that the common law rule, that an action accrues on the date of injury (*Lambert* v. *McKenzie* (1901) 135 Cal. 100, 103 [67 P. 6]), applies only as modified by the "discovery rule." The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause.[4] (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d 93, 99.) A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her. (*Id.* at p. 101.) The parties differ as to what constitutes sufficient knowledge to start the statute running.

The Court of Appeal applied *Kensinger, supra,* 171 Cal.App.3d 376, a factually similar case, and found that it was a question of fact as to whether

---

[3] The court stated: "We decline to interpret *Sindell,* as plaintiff proposes, as creating a new cause of action by defining generic DES as the *causation* element."

[4] Defendants argue that the statute should commence when the plaintiff knows of her injury and its *factual* cause. Although that position has been adopted in some jurisdictions (see e.g., *United States* v. *Kubrick* (1979) 444 U.S. 111 [62 L.Ed.2d 259, 100 S.Ct. 352] [concerning the Federal Tort Claims Act]; *Anthony* v. *Koppers Co., Inc.* (1980) 284 Pa. Super. 81 [425 A.2d 428, 436], revd. on other grounds, (1981) 496 Pa. 119 [436 A.2d 181]), it is not the rule in California. (See, e.g., *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 99 [132 Cal.Rptr. 657, 553 P.2d 1129]; *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 896 [218 Cal.Rptr. 313, 705 P.2d 886].)

the statute of limitations began to run more than one year before plaintiff Jolly filed her complaint. The *Kensinger* court acknowledged the well established rule that ignorance of the legal significance of known facts or the identity of the defendant would not delay the running of the statute—only ignorance of one or more "critical facts" could have that effect. (171 Cal.App.3d at p. 383.)

However, the key point in *Kensinger* was its determination that one "critical fact" was knowledge of some wrongful conduct. Specifically, the court held that a plaintiff may have "no knowledge of facts indicating wrongdoing by a particular defendant. In such a situation, litigation might be premature for lack of knowledge of any *factual basis* for imputing fault to a manufacturer rather than ignorance of supportive legal theories. . . . [¶] Knowledge of the occurrence and origin of harm cannot necessarily be equated with knowledge of the factual basis for a legal remedy. . . ." (171 Cal.App.3d at pp. 383-384; italics added.) Accordingly, the *Kensinger* court held that the statutory clock did not begin to tick until the plaintiff knew or reasonably should have known of the facts constituting wrongful conduct, as well as the fact of her injury and its relation to DES.[5] The Court of Appeal, applying *Kensinger,* held that it could not be said that "as a matter of law" Jolly was or should have been aware of *facts* establishing wrongdoing, e.g., "either failure to test or failure to warn," until within one year of the date she filed suit.

The rule proposed in *Kensinger* goes too far.[6] Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.[7] As we said in *Sanchez* and reiterated in *Gutierrez,* the limitations period begins once the plaintiff " ' "has notice or

[5] Plaintiff maintains that the *Kensinger* rule was foreshadowed by prior California authority. However, the cases that she cites do no more than set out the discovery rule as previously described. They do not directly address the question of whether a suspicion of wrongdoing without knowledge of particular facts establishing misconduct will begin the statutory period. (See *Young* v. *Haines* (1986) 41 Cal.3d 883 [226 Cal.Rptr. 547, 718 P.2d 909] [effect of fraudulent concealment by a physician]; *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426 [186 Cal.Rptr. 228, 651 P.2d 815] [same]; *Gutierrez, supra,* 39 Cal.3d 892 [same]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874 [112 Cal.Rptr. 540, 519 P.2d 588] [concerning, inter alia, the effect of a prompt investigation on the accrual of an action under the Government Tort Claims Act]; *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591] [effect on statute of limitations when plaintiff might have had no cause of action at earlier point in time, but believed that he did].)

[6] We recognize that some jurisdictions have adopted rules similar to that set out in *Kensinger.* (See, e.g., *Anthony* v. *Abbott Laboratories* (R.I. 1985) 490 A.2d 43 (relied on in *Kensinger*); *Dawson* v. *Eli Lilly & Co.* (D.D.C. 1982) 543 F.Supp. 1330; *Lopez* v. *Swyer* (1973) 62 N.J. 267 [300 A.2d 563].) However, as will be shown, the rule in California is otherwise.

[7] In this context, "wrong," "wrongdoing," and "wrongful" are used in their lay understanding.

information of circumstances to put a reasonable person *on inquiry* . . . ." ' " (*Gutierrez, supra,* 39 Cal.3d at pp. 896-897, quoting *Sanchez, supra,* 18 Cal.3d at p. 101 (italics added by the *Gutierrez* court).) A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

For example, in *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868 [191 Cal.Rptr. 619, 663 P.2d 177], we held that plaintiff was barred by the statute of limitations from pursuing her suit for fraud, even though she filed suit soon after she discovered facts confirming her long-held suspicion that her former husband had concealed the true worth of his assets during dissolution negotiations. We noted that the plaintiff had doubts at the time she signed the dissolution agreement as to the actual value of her husband's Bechtel stock. However, neither she nor her attorney took adequate steps then to investigate the matter. Years later, when the stock was sold for an amount well beyond that stated during the dissolution discussions, plaintiff brought suit. We held that her early suspicion put her on inquiry notice of the potential wrongdoing, which an investigation would have confirmed. Her failure timely to investigate barred the action. This conclusion was reached over a strong dissent, in which it was argued that the statute of limitations should not begin to run until plaintiff discovered the *facts* constituting the misconduct—her mere suspicion was not enough. (*Id.* at p. 876 et seq. [Bird, C. J., dissenting].)

Another case in point is *Gray v. Reeves* (1978) 76 Cal.App.3d 567. In *Gray*, a plaintiff suffered an allergic reaction to a drug in 1971, but delayed filing suit against the prescribing doctor and manufacturer until 1973. The Court of Appeal affirmed the trial court's award of summary judgment for defendants based on the statute of limitations. The court noted plaintiff's admission that in 1971 he knew that defendants "did something wrong." (*Id.* at pp. 576-577.) Even without specific facts as to why the drug was defective, plaintiff was on notice at that time that he had a potential cause of action. (*Id.* at p. 577.) (See also *Graham v. Hansen* (1982) 128 Cal.App.3d 965, 972-973 [180 Cal.Rptr. 604] ["If plaintiff believes because of injuries she has suffered that someone has done something wrong" the statutory period begins].)

The foregoing is fully consistent with the policy of deciding cases on the merits as well as the policies underlying the statute of limitations. In *Davies v. Krasna* (1975) 14 Cal.3d 502, 512 [121 Cal.Rptr. 705, 535 P.2d 1161, 79

A.L.R.3d 807], we held that the fundamental purpose of the statute is to give defendants reasonable repose, that is, to protect parties from defending stale claims. A second policy underlying the statute is to require plaintiffs to diligently pursue their claims. Because a plaintiff is under a duty to reasonably investigate and because a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period, suits are not likely to be unreasonably delayed, and those failing to act with reasonable dispatch will be barred. At the same time, plaintiffs who file suit as soon as they have reason to believe that they are entitled to recourse will not be precluded.[8]

■ While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper. (*Christ* v. *Lipsitz* (1979) 99 Cal.App.3d 894 [160 Cal.Rptr. 498].) ■ In this case it is clear that application of the discovery rule supports the trial court's judgment. Plaintiff stated that as early as 1978 she was interested in "obtaining more information" about DES because she wanted to "make a claim"; she felt that someone had done something wrong to her concerning DES, that it was a defective drug and that she should be compensated.[9] She points to no evidence contradicting her candid statements. Thus, plaintiff is held to her admission; she suspected that defendants' conduct was wrongful during 1978—well over a year before she filed suit. This suspicion would not have been allayed by any investigation. To the contrary, a timely investigation would have disclosed numerous

---

[8] To the extent that *Kensinger, supra,* 171 Cal.App.3d 376, conflicts with the foregoing, it is disapproved. Of course, nothing stated herein affects the well-established rule that the ignorance of the legal significance of known facts or the identity of the wrongdoer will not delay the running of the statute.

[9] Specifically, the following dialogue was contained in plaintiff's deposition and was part of the motion for summary judgment:

"Q: Why at that time were you interested in obtaining more information [about the DES ingested by plaintiff's mother]?

"A: To see if I had any type of recourse.

"Q: You mean in terms of making a claim or recovering from someone for your injury?

"A: Sure, yes.

"Q: In 1978 did you feel that you should have some kind of recourse?

"A: Yes.

"Q: You felt that someone had done something wrong to you?

"A: Yes.

"Q: And that you should be compensated for it?

"A: Yes.

" . . . . . . . . . . . . . . . . . . .

"Q: You believed at that time, in 1978, that DES was a defective drug, is that right?

"A: Yes."

articles concerning DES and many DES suits filed throughout the country alleging wrongdoing.[10]

Plaintiff's contention that our decision in *Sindell* redefined "causation" and "wrongful," providing the crucial "fact" necessary for her to suspect wrongdoing, is without merit. *Sindell, supra,* 26 Cal.3d 588, is fully discussed below. At this point it is necessary only to point out the oft-stated rule that it is the discovery of facts, not their legal significance, that starts the statute. (See, e.g., *Gutierrez, supra,* 39 Cal.3d at p. 898.) All of the facts set out in *Sindell* that are relevant to plaintiff's case were either already known by her in 1978 or could have been discovered through a reasonable investigation.[11] Indeed, plaintiff admits that she learned of no new facts between 1978 and 1980.[12]

---

[10] See, e.g., *The Cancer That Doctors Caused,* San Francisco Examiner (Sept. 12, 1979); *DES—A Chemical Menace to the Unborn,* San Francisco Chronicle (Dec. 18, 1978); *Millions of Women to Be Notified of DES Cancer Risk,* Los Angeles Times (Oct. 5, 1978); *Effects of DES; Legal Battles and Human Suffering,* Oakland Tribune (April 28, 1977); *Major U.S. Companies Sued for Damage in Class Action,* Wall Street Journal (Sept. 18, 1974); Questions and Answers about DES Exposure Before Birth (DESAD Project), Department of Health, Education, and Welfare Publication No. 76-1118 (1976); Information for Physicians, DES Exposure In Utero, Department of Health, Education, and Welfare Publication No. 76-1119 (1976); *Gray* v. *United States* (S.D. Tex. 1978) 445 F.Supp. 337; *Lyons* v. *Premo Pharmaceutical Labs., Inc.* (1979) 170 N.J. Super. 183 [406 A.2d 185]; *Abel* v. *Eli Lilly & Co.* (1979) 94 Mich.App. 59 [289 N.W.2d 20]; *McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77 [150 Cal.Rptr. 730]. Indeed, plaintiff admitted in her deposition that prior to 1978 she was aware of at least one pending DES lawsuit. Further, she argues that it was *McCreery* v. *Eli Lilly & Co., supra,* 87 Cal.App.3d 77, discussed *post,* that effectively precluded her from filing a timely action.

[11] This case does not present us with a situation where the plaintiff conducted a prompt investigation and brought suit as soon as the results of the investigation were known, but even so filed her claim after the limitations period had expired. In such a situation, the cause of action might still be timely. (See *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 887-889 [112 Cal.Rptr. 540, 519 P.2d 588] [concerning the 100-day period set forth in the Government Tort Claims Act].)

[12] The following colloquy took place at plaintiff's deposition:

"Q: As of the time you first called Mr. Schulz's firm in 1980, had you learned anything new about your mother's use of DES of which you were not aware in 1978?

"A: Not that I remember.

"Q: Had you learned anything about the drug DES, that is its use or the manufacture, testing of the drug, the effect of the drug, during that period of time between March '78 and the time you contacted the attorney in 1980?

"A: Not that I remember.

"Q: During that same period of time had you learned any information as to what company made the drug?

"A: Not that I remember.

"Q: Is it correct then that the only thing that you learned new or differently pertaining to DES or your injury between March of 1978 and the time you called the attorneys in 1980 was that the Court ruled you could file a lawsuit even if you couldn't identify the manufacturer?

"A: Correct."

In sum, the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged. Here, plaintiff suspected as much no later than 1978. Because she did not file suit until 1981, her suit, unless otherwise saved, is time-barred.[13]

## III. *The Effect of Sindell*

■■■ Plaintiff's major argument, which was summarily rejected by the trial court and the Court of Appeal, is that our landmark decision in *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588, constituted the "fact" that activated the statute. Plaintiff does not dispute the general rule that ignorance of the identity of the defendant does not affect the statute of limitations. (See, e.g., *Gutierrez, supra,* 39 Cal.3d 892, 899; *Neal* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 194 [98 Cal.Rptr. 837, 491 P.2d 421]; *Gale* v. *McDaniel* (1887) 72 Cal. 334 [13 P. 871]; *Snow* v. *A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 127 [211 Cal.Rptr. 271]; *Baker* v. *Hughes Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321 [114 Cal.Rptr. 171, 91 A.L.R.3d 981].) However, she asserts that the rule does not apply to the facts of her case.

Plaintiff contends that prior to *Sindell, supra,* 26 Cal.3d 588, the defective "product" was defined as the specific DES pills her mother ingested. Consequently, plaintiff could not establish a causal link between any particular manufacturer and her injury. She argues that *Sindell* redefined the defective "product" as generic DES, making all manufacturers of DES contributors to her injury. Thus, now she is able to establish a causal link between the harm suffered and defendants.

Defendants reply that this was not the intended effect of *Sindell*. They argue that *Sindell* merely shifted from plaintiff to defendants the burden of proving which manufacturer's drug caused plaintiff's injury.

There is merit in both contentions. *Sindell* is more than a mere "burden shifting" case. Although based in part on *Summers* v. *Tice* (1943) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], *Sindell* went beyond that precedent.[14] In *Sindell* we noted that all DES manufacturers presumptively contributed to the alleged injury in that DES was a generic drug, manufactured from an

---

[13] Plaintiff's failure to file suit despite her suspicion of wrongdoing is not surprising in the context of this case. By her own admission, her real reason for delaying action was that she did not know *whom* to sue, not that she did not know *whether* to sue. See discussion, *post,* this page.

[14] In *Summers,* we held that an innocent plaintiff who could not identify which of two negligent hunters shot him, but was sure that one of them was the culprit, could bring suit by joining both. The burden then shifted to each defendant to show that he did not cause the injury.

agreed formula. Hence, all DES manufacturers shared in the alleged societal wrong. We held that between an innocent plaintiff and a group of allegedly negligent defendants, one of whom probably caused the injury, the latter should bear the costs of the harm, and we were willing to fashion a new remedy to meet that goal. Therefore, we imposed liability on defendants even though there was a significant possibility that the manufacturer of the particular pills ingested by a plaintiff's mother was not a party to the suit. (26 Cal.3d at pp. 610-612.)

At the same time, we did not create an entirely new tort, nor identify a new "product." *Sindell* merely bridged the causal gap between DES manufacturers as a group and plaintiff's injury. Where the actual manufacturer of the ingested DES is unknown, causation by joined manufacturers of a substantial share of the DES that a plaintiff's mother might have taken would be presumed, subject, of course, to each drug manufacturer's ability to rebut the presumption by proving that the actual pills in question were not its product.

We noted in *Sindell* that the trial court properly dismissed a drug company that did not manufacture any DES during the relevant time. (*Id.* at p. 612.) Plaintiff interprets this as merely establishing that the dismissed defendant engaged in no *wrongful conduct* during the relevant period and, hence, shares no liability. This interpretation is incorrect. A defendant who manufactured only capsules in a case where tablets were ingested would be similarly dismissed. Such a result would make no sense if *Sindell* were based on a new theory of wrongful conduct—a capsule manufacturer's conduct would be equally culpable. In addition, under plaintiff's theory carried to its logical extreme all drug companies would be liable even if plaintiff knew the actual manufacturer of the drug. Yet that clearly is not the law.[15]

From the foregoing, it is clear that *Sindell* did not provide plaintiff with the critical "fact" that started the limitations period. Nor did it create a new tort with an independent starting date for purposes of the statute of limitations. Rather, *Sindell* demonstrated the legal significance of facts already known to plaintiff. The statute had started to run for plaintiff well before *Sindell* was decided.

At a less legalistic but more fundamental level, plaintiff argues, with some persuasive force, that prior to *Sindell* she could not have prevailed on her

---

[15]Such a result surely would be beneficial to plaintiffs. For example, some drug companies are judgment proof or beyond the court's jurisdiction. Under plaintiff's interpretation of *Sindell* carried to its logical extreme, that would not prevent a plaintiff from recovering from other DES manufacturers even if she knew that they did not produce the ingested DES. However, such a result is foreclosed.

suit. She notes that during the time that defendants argue her action would have been timely, *McCreery* v. *Eli Lilly & Co., supra,* 87 Cal.App.3d 77 (overruled by *Sindell, supra,* 26 Cal.3d 588), effectively barred her claim. In *McCreery,* the Court of Appeal held that a plaintiff who could not identify the precise manufacturer of the pills ingested by her mother did not allege a cause of action. Plaintiff undoubtedly fell into this group. The response to plaintiff's contention is that a change in the law, either by statute or by case law, does not revive claims otherwise barred by the statute of limitations.

The seminal case on point is *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399 [99 Cal.Rptr. 129, 491 P.2d 1105]. Professor Monroe was fired from the California State College system for failing to take a loyalty oath. The statute requiring the oath was held constitutional in *Pockman* v. *Leonard* (1952) 39 Cal.2d 676 [249 P.2d 267]. In view of that case, Professor Monroe did not seek judicial review of the state's action within the statutory period. We overruled *Pockman* in *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961], and declared the statute unconstitutional.

Shortly thereafter, Professor Monroe brought suit in part for back wages. We held that this portion of Professor Monroe's suit was untimely because a change in the law applied only to timely filed claims; the change could not revive claims already barred by the statute of limitations. (*Monroe, supra,* 6 Cal.3d at pp. 406-407.) Although prior to *Vogel* Professor Monroe was effectively precluded from bringing his claim, it was not "impossible" for him to do so. We held that "no legal obstacle barred a judicial challenge to [his] initial discharge" and that the "mere existence of a contrary precedent has never been considered sufficient to toll the statute of limitations." (*Id.* at p. 408, fn. 5.) (Accord, *Estate of Horman* (1971) 5 Cal.3d 62 [95 Cal.Rptr. 433, 485 P.2d 785] [ability of Soviet residents to inherit a portion of a Californian's estate]; *Bartman* v. *Estate of Bartman* (1978) 83 Cal.App.3d 780 [148 Cal.Rptr. 207] [guest statute]; *Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118] [duty of psychiatrist after *Tarasoff* v. *Board of Regents* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]]; *Priola* v. *Paulino* (1977) 72 Cal.App.3d 380 [140 Cal.Rptr. 186] [loss of consortium]; *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66 [128 Cal.Rptr. 454] [loss of consortium]; *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370] [spousal suit statute]; *Lopa* v. *Superior Court* (1975) 46 Cal.App.3d 382 [120 Cal.Rptr. 445] [guest statute].) Precedent is in unanimous accord with this rule.

 In all of the above-cited cases, the court recognized that the rule may work a harsh result. Nonetheless, it is justified in three ways. First, the

rule encourages people to bring suit to change a rule of law with which they disagree, fostering growth and preventing legal stagnation. Second, the statute of limitations is not solely a punishment for slow plaintiffs. It serves the important function of repose by allowing defendants to be free from stale litigation, especially in cases where evidence might be hard to gather due to the passage of time. Third, to hold otherwise would allow virtually unlimited litigation every time precedent changed. For example, in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], this court held that contributory negligence was not a total bar to recovery. There were undoubtedly thousands of potential plaintiffs through the years who had been reasonably advised to the contrary by competent counsel and so failed to bring suit. Nevertheless, allowing them all to sue within a year after the *Li* decision would have been untenable. Courts simply are not equipped to handle cases dating back many years, eventually brought because the law has changed. This prohibition against revival of claims can obviously create a hardship on such unfortunate plaintiffs (and a windfall to fortunate defendants). However, the hardship is no greater than that incurred by plaintiffs who received an adverse final judgment based on the "old" law and are barred from relitigating their case by res judicata.

Plaintiff seeks to avoid application of the rule that contrary precedent does not toll the statute of limitations by noting that prior to each of the aforementioned cases there had been a decided policy that barred plaintiffs from the courts. Here, in contrast, no legislative or judicial policy was expressed to preclude DES victims who could not identify the manufacturer of the ingested drug from bringing suit. Plaintiff's distinction is accurate, but irrelevant. Such a policy has never been articulated as a reason to enforce statutes of limitation following changes in the law, nor does this difference justify creating retroactivity reaching back to claims barred by res judicata or the statute of limitations.

Moreover, in early 1978, plaintiff's legal situation was not as dismal as it initially appears. First, she was in no worse a position than Judith Sindell, who ultimately prevailed in changing the law. Second, there were other, more traditional theories available on which plaintiff could base her lawsuit, such as civil conspiracy or joint liability under *Summers* v. *Tice, supra,* 33 Cal.2d 80. While it is true that these theories were not clearly meritorious (indeed they were ultimately rejected by us in *Sindell, supra,* 26 Cal.3d 588), they did provide plaintiff with a nonfrivolous cause of action. Although in the latter part of 1978, *McCreery, supra,* 87 Cal.App.3d 77, appeared to foreclose such a suit, that case was an intermediate appellate court decision. In this regard, the last word on the subject had not been spoken, and other Courts of Appeal were free to disregard that case. Therefore, plaintiff was

not entirely forestalled, even as a practical matter, from bringing a timely suit.

Finally, even without using any of the above theories, plaintiff could have filed a timely complaint under section 474, which allows suit to be filed against a Doe party. From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant. (See *Altman* v. *Morris Plan Co.* (1976) 58 Cal.App.3d 951, 962-963 [130 Cal.Rptr. 397]; *Staples* v. *Zoph* (1935) 9 Cal.App.2d 369, 370 [49 P.2d 1131].) Hence, in the instant case, plaintiff could have brought a timely Doe action, effectively enlarging the statute of limitations period for three years. Had she done so, her complaint would have been pending when *Sindell, supra,* 26 Cal.3d 588, was decided.

 In sum, plaintiff's argument that *Sindell* created or revived her cause of action must fail.

### IV. *Application of American Pipe*

 Relying on *American Pipe & Construction Co.* v. *Utah* (1974) 414 U.S. 538 [38 L.Ed.2d 713, 94 S.Ct. 756] and its progeny, plaintiff argues that the filing of the class action in *Sindell, supra,* 26 Cal.3d 588,[16] tolled the statute of limitations with respect to individual members of the putative class until the class was denied certification in 1982. Defendants respond that the issue is not properly before us, as it was not raised below (Cal. Rules of Court, rule 29), a contention we reject in light of the issue's great public importance. (See, e.g., *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725].) Alternatively, defendants argue that the tolling principle set forth in *American Pipe, supra,* 414 U.S. 538, and followed by the Court of Appeal in *Bangert* v. *Narmco Materials, Inc.* (1984) 163 Cal.App.3d 207 [209 Cal.Rptr. 438], has no application to the present case. We agree that *American Pipe* is inapplicable here.

We have repeatedly directed that in the absence of controlling state authority, California courts should utilize the procedures of rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) to ensure fairness in the resolution of class action suits. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469, fn. 7 [174 Cal.Rptr. 515, 629 P.2d 23]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr.

---

[16] We take judicial notice (Evid. Code, § 452, subd. (d)) of the pleadings, files, and orders filed in *Sindell* (L.A. County Super. Ct., No. C169127) and in Rogers v. Rexall Drug Co., et al. (Ventura County Super. Ct., No. 61220), consolidated with *Sindell* on appeal (see *Sindell, supra,* 26 Cal.3d at p. 597).

796, 484 P.2d 964, 53 A.L.R.3d 513].) Under rule 23, the filing of a timely class action commences the action for all members of the class as subsequently determined. (*American Pipe, supra,* 414 U.S. 538, 550 [38 L.Ed.2d 713, 725].) In *American Pipe,* the United States Supreme Court held that, under limited circumstances, if class certification is denied, the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification for all purported members of the class who either make timely motions to intervene in the surviving individual action (*id.* at pp. 552-553), or who timely file their individual actions (*Crown, Cork & Seal Co.* v. *Parker* (1983) 462 U.S. 345, 350 [76 L.Ed.2d 628, 633-634, 103 S.Ct. 2392]). Although we are not bound by the United States Supreme Court decisions (see *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 969, fn. 15 [124 Cal.Rptr. 376]; *Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 582 [125 Cal.Rptr. 221]), we nevertheless consider the applicability of *American Pipe* (*supra,* 414 U.S. 538) here.

In *American Pipe* the State of Utah commenced a civil action, claiming that defendants conspired to rig steel and concrete pipe prices in violation of the Sherman Act. The suit purported to be a class action, brought on behalf of Utah's public agencies and others who were end users of the pipe. On defendant's motion, the district court denied class action status for failure to satisfy the numerosity requirement of rule 23(a)(1) of the Federal Rules of Civil Procedure. The public agencies who were alleged as class members then filed motions to intervene. The court denied the motions on statute of limitations grounds. The Ninth Circuit reversed.

The United States Supreme Court in a unanimous decision affirmed the circuit court: "We hold that in this posture, at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." (*American Pipe, supra,* 414 U.S. 538, 552-553 [38 L.Ed.2d 713, 726].)

In *Bangert* v. *Narmco Materials, Inc., supra,* 163 Cal.App.3d 207, the Court of Appeal extended *American Pipe* to apply to a class action suit against a plastics research plant seeking injunctive and monetary relief for property damage, economic loss and physical injuries. The asserted class consisted of persons living within a half-mile radius of the plant. The trial court denied class certification on grounds of insufficient community of

interest. Thereafter the court denied as untimely plaintiffs' motion for leave to amend the complaint nunc pro tunc to add as plaintiffs 92 members of the class designated in the original complaint.

The Court of Appeal reversed. Citing *American Pipe,* the court held that the filing of the complaint tolled the running of the statute of limitations for all members of the purported class until class action certification was denied, even though, unlike *American Pipe,* denial was not for lack of numerosity, but for insufficient community of interest. (*Bangert* v. *Narmco Materials, Inc., supra,* 163 Cal.App.3d at p. 212, fn. 2.)

Plaintiff urges us to follow the *Bangert* court's extension of *American Pipe* so as to find that the filing of the *Sindell* class action tolled the statute of limitations applicable to her individual suit. To resolve this issue, we need to consider both the nature of the *Sindell* action and the rationale underlying *American Pipe.*

Judith Sindell filed suit in 1976. She purported to be suing on her own behalf and, "with respect to certain relief," on behalf of a class of women allegedly similarly situated. For herself, individually, Sindell claimed damages for specific personal injury suffered as a result of her mother's ingestion of DES during pregnancy. In her cause of action relating to the class claims, Sindell described the class as female residents of California "who have been exposed to DES before birth and who may or may not know that fact or danger, and as a result of which, have or may have contracted or in the future may contract adenocarcinoma or vaginal or cervical adenosis or precancerous tumors of the breast or cancer of the bladder." For the class, Sindell sought only declaratory relief and an order directing defendants to publicize the dangers of DES and the necessity of medical evaluations and to fund the establishment and maintenance of clinics to provide free examinations to the DES daughters.

Six years later, in 1982, the trial court denied certification. As reason, the court cited, in relevant part, the lack of commonality among class members on issues of proximate cause, extent of injury, and appropriate medical examination or treatment.[17] "As a general rule," the court observed, "so-

---

[17] Other reasons cited by the court were the amorphous nature of the alleged class, which would necessitate substantial postjudgment litigation in order to identify class members; the inequity of a class action, in that unsuspecting class members unaware of the pendency of the lawsuit and their right to opt out would forfeit their right to claim very substantial damages; and plaintiff's nonmembership in the class, having "carefully excluded herself," in that the

called 'mass accidents' or 'common disasters' are considered not appropriate for class litigation. This inappropriateness is based upon the overwhelming uniqueness of the issues stemming from the necessity for the trier to hear and determine individually each victim's injuries, his suffering, financial loss, etc. Thus even though a common question may be involved (e.g., the defendant's tort) the matter is not suitable for a class action."

The question to be asked, then, is whether the *Sindell, supra,* 26 Cal.3d 588, mass-tort class action fits the rationale of *American Pipe, supra,* 414 U.S. 538. We believe the answer is no.

Underlying the tolling rule of *American Pipe* were two major policy considerations. The first was the protection of the class action device. In cases where class certification is denied for what the high court characterized as "subtle factors," unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable," depriving class actions "of the efficiency and economy of litigation which is a principal purpose of the procedure." (*American Pipe, supra,* 414 U.S. at p. 553 [38 L.Ed.2d at p. 726]; see also *Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. at pp. 350-351 [76 L.Ed.2d at pp. 633-635].)

The second consideration involved the effectuation of the purposes of the statute of limitations. "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,'" the high court stated, "are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (414 U.S. at pp. 554-555 [38 L.Ed.2d at p. 727].) In these circumstances, the court concluded, the purposes of the statute of limitations would not be violated by a decision to toll. (*Ibid.*; see, generally, Comment, *Class Actions and Statutes of Limitations* (1981) 48 U. Chi. L.Rev. 106, 108-109.)

The tension between these two considerations, as at least one commentator has observed (Comment, *supra,* 48 U. Chi. L.Rev. 106, 110-111), has led

damages remedy she sought was mutually exclusive from the medical evaluation she sought for the class. (*Sindell, supra,* ruling upon motion for certification.)

lower courts in applying *American Pipe* to use different approaches. Some courts concentrate on the protection of the class action device: "We are persuaded that implicit in the Supreme Court's *American Pipe* decision was the Court's determination that 'effectuation of the purpose of litigative efficiency and economy,' (which Rule 23 was designed to perform) transcends the policies of repose and certainty behind statutes of limitations. [Citation.]" (*Appleton Elec. Co.* v. *Graves Truck Line, Inc.* (7th Cir. 1980) 635 F.2d 603, 609, cert. den. (1981) 451 U.S. 976 [68 L.Ed.2d 357, 101 S.Ct. 2058]; see, e.g., *Green* v. *United States Steel Corp.* (E.D. Pa. 1979) 481 F.Supp. 295, 299-301; *Goldstein* v. *Regal Crest, Inc.* (E.D. Pa. 1974) 62 F.R.D. 571, 578-80; *White* v. *Sims* (Ala. 1985) 470 So.2d 1191, 1192-1194.) Other courts focus on the policies underlying the statute of limitations and thus inquire whether the defendant received notice of a subsequent plaintiff's claim from the prior class suit. "[T]he appropriate focus of inquiry here should simply be upon the extent to which the claims asserted in the earlier class proceeding have in fact placed a defendant upon notice of the claims presently at issue." (*Rose* v. *Ark. Val. Environ. & Utility Auth.* (W.D. Mo. 1983) 562 F.Supp. 1180, 1192; see, e.g., *McCarthy* v. *Kleindienst* (D.C. Cir. 1977) 562 F.2d 1269, 1272-1276 [46 A.L.R.Fed. 852]; *Haas* v. *Pittsburgh National Bank* (3d Cir. 1975) 526 F.2d 1083, 1097; *Stoddard* v. *Ling-Temco-Vought, Inc.* (C.D. Cal. 1981) 513 F.Supp. 314, 334-335; *Bartlett* v. *Miller and Schroeder Municipals* (Minn.App. 1984) 355 N.W. 2d 435, 439-440; *First Baptist Church* v. *Citronelle-Mobile* (Ala. 1981) 409 So.2d 727, 728-730.) Still others apply *American Pipe* broadly to mean that the statute of limitations must always be tolled, eliminating discussion of the reason for denial of class status or the notice issue. (See, e.g., *Satterwhite* v. *City of Greenville* (5th Cir. 1978) 578 F.2d 987, 997, vacated on other grounds (1980) 445 U.S. 940 [63 L.Ed.2d 773, 100 S.Ct. 1334]; *Sanders* v. *John Nuveen & Co. Inc.* (7th Cir. 1975) 524 F.2d 1064, 1074, fn. 28, vacated on other grounds (1976) 425 U.S. 929 [48 L.Ed.2d 172, 96 S.Ct. 1659]; *Jones* v. *Holy Cross Hospital Silver Springs, Inc.* (D. Md. 1974) 64 F.R.D. 586, 590 & fn. 6; *Morton* v. *Charles County Board of Education* (D. Md. 1974) 373 F.Supp. 394, 396, affd. (4th Cir. 1975) 520 F.2d 871, cert. den. (1975) 423 U.S. 1034 [46 L.Ed.2d 408, 96 S.Ct. 566].)

Considering both policy considerations—protecting the efficiency and economy of litigation and protecting the defendant from unfair claims—we decline to extend the tolling doctrine of *American Pipe, supra,* 414 U.S. 538, to the present case. Rather, for the reasons set forth below, we conclude that the *Sindell* class action complaint neither sufficiently put defendants on notice of the substance and nature of plaintiff's claims, nor served to further economy and efficiency of litigation, so as to justify affording plaintiff shelter under the protective umbrella of *American Pipe.*

■ This court has held that the ultimate determination of whether a class action is appropriate turns on the existence and extent of common questions of law and fact. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) As the trial court in the present case correctly observed, mass-tort actions for personal injury most often are not appropriate for class action certification. (See Fed. Rules Civ. Proc., rule 23, supplemental note of Advisory Com., reported 28 U.S.C.A. rule 23, pp. 54-55.) The major elements in tort actions for personal injury—liability, causation, and damages—may vary widely from claim to claim, creating a wide disparity in claimants' damages and issues of defendant liability, proximate cause, liability of skilled intermediaries, comparative fault, informed consent, assumption of the risk and periods of limitation. (*D'Amico* v. *Sitmar Cruises, Inc.* (1980) 109 Cal.App.3d 323 [167 Cal.Rptr. 254]; *Rose* v. *Medtronics, Inc.* (1980) 107 Cal.App.3d 150 [166 Cal.Rptr. 16]; *In re Northern Dist. of Cal., Dalkon Shield, etc.* (9th Cir. 1982) 693 F.2d 847, cert. den. *A.H. Robins Co., Inc.* v. *Abed* (1983) 459 U.S. 1171 [74 L.Ed.2d 1015, 103 S.Ct. 817]; *In re Tetracycline Cases* (W.D. Mo. 1985) 107 F.R.D. 719; *Mertens* v. *Abbott Laboratories* (D. N.H. 1983) 99 F.R.D. 38.) Thus, for example, in DES litigation, use of the class action device has consistently been rejected. (*Mertens* v. *Abbott Laboratories, supra*; *McElhaney* v. *Eli Lilly & Co.* (D. S.D. 1982) 93 F.R.D. 875; *Ryan* v. *Eli Lilly & Co.* (D. S.C. 1979) 84 F.R.D. 230; *Mink* v. *University of Chicago* (N.D. Ill. 1978) 460 F.Supp. 713.) California DES litigation has not departed from this trend; no reported California cases have approved DES litigation in class action form.

■ The same reasons that render certification of mass-tort claims generally inappropriate render inappropriate the application and extension of *American Pipe, supra,* 414 U.S. 538, to the present case. Because of the nature of the *Sindell* complaint—as indicated, Judith Sindell did not seek to certify the class as to personal injury claims, the gravamen of plaintiff's complaint—and the differences in issues of fact and law—plaintiff's action for damages puts into issue the prenatal treatment of her mother, the specific form of DES prescribed (e.g., tablet, capsule), the dosage taken, her mother's obstetrical history and many other issues necessarily involved in proving causation, damages and defenses—the *Sindell* class suit (*supra,* 26 Cal.3d 588) could not have apprised defendants of plaintiff's substantive claims. Therefore, plaintiff cannot now claim that Sindell's complaint put

defendants on notice of allegations related to personal injury within the statutory period of limitation so that they might prepare their defense.[18]

This deficiency in Sindell's class action suit is alone sufficient to deny plaintiff relief under *American Pipe*. As Justice Blackmun, in his concurrence in *American Pipe*, cautioned: "Our decision . . . must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights. Nor does it necessarily guarantee intervention for all members of the purported class. [¶] As the Court has indicated, the purpose of statutes of limitations is to prevent surprises 'through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.]" (*American Pipe, supra,* 414 U.S. 538, 561 [38 L.Ed.2d 713, 731] (conc. opn. of Blackmun, J.).)

Justice Blackmun's admonition was echoed by three of his colleagues in the principal United States Supreme Court decision interpreting *American Pipe—Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. 345. In *Crown Cork* Justice Powell, in a concurring opinion joined by Justices Rehnquist and O'Connor, emphasized the importance of avoiding abuse of the *American Pipe* tolling rule: "The rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status. [¶] . . . [W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'" (462 U.S. at pp. 354-355 [76 L.Ed.2d at pp. 636-637], quoting *American Pipe, supra,* 414 U.S. at p. 562 [38 L.Ed.2d at p. 731] (conc. opn. by Blackmun, J.).)

Our position in the present case ensures that the abuse warned of by Justice Blackmun will not occur. By refusing to extend *American Pipe's*

---

[18] Although in *Rogers* v. *Abbott Laboratories,* consolidated with *Sindell, supra,* 26 Cal.3d 588, on appeal (see *id.* at p. 597), plaintiff Maureen Rogers evidently asked for the same legal relief on behalf of the class as for herself (see *id.* at p. 596), this is not clear from the complaint, nor does plaintiff rely on *Rogers* as having tolled the statute of limitations. However, even if the *Rogers* allegations were sufficient to include the class in claims for personal injury, for the reasons hereinafter stated relating to the inappropriateness of the class action device in litigating personal injury claims, such would not alter the result in this case. We observe, moreover, that plaintiff's complaint was filed considerably more than one year after class certification in *Rogers* was denied, thus precluding her reliance on *Rogers* in any event.

tolling doctrine to allow the instant suit, we heed Justice Blackmun's admonishment to district judges to exercise discretion in applying the *American Pipe* rule in order to "prevent the type of abuse mentioned above and [to] preserve a defendant whole against prejudice arising from claims for which he has received no prior notice." (414 U.S. at p. 562 [38 L.Ed.2d at p. 731].) Because the *Sindell* complaint never put defendants on notice that personal injury damages were being sought on a class basis, it would be unfair to defendants to toll the statute of limitations on such personal injury actions. (*American Pipe, supra,* 414 U.S. 538, 553 [38 L.Ed.2d 713, 726].) And because the *Sindell* complaint did not seek personal injury damages on behalf of the class, even those absent class members who were aware of that action could not reasonably have relied on the complaint as a basis for postponing their own personal injury actions. Thus, our ruling today does not result in duplicative litigation of the sort feared by the court in *American Pipe,* nor does it deprive rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) of its purpose to further the efficiency and economy of litigation (*American Pipe, supra,* 414 U.S. 538, 553).

In light of our disposition, we need not address the broader question whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality. We observe, however, that because personal-injury mass-tort class-action claims can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case, such claims may be presumptively incapable of apprising defendants of "the substantive claims being brought against them" (*American Pipe, supra,* 414 U.S. 538, 555 [38 L.Ed.2d 713, 727]), a prerequisite, in our view, to the application of *American Pipe* (*ibid.;* see *Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. 345, 353 [76 L.Ed.2d 628, 635-636]). This being so, putative class members would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations. The presumption, rather, should be to the contrary—i.e., that lack of commonality will defeat certification and preclude application of the *American Pipe* tolling doctrine.[19]

---

[19] Although we believe class actions can rarely be appropriate for resolution of mass tort claims, that is not to say some of the benefits of the class action device cannot be implemented by other means, such as coordination proceedings (§ 404 et seq.; Cal. Rules of Court, rule 1501 et seq.). In such type of proceedings common issues can be determined, yet each individual plaintiff is responsible for the proof of particular facts applicable to that particular plaintiff. (See generally, 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 309-329, pp. 361-380.)

For the reasons previously stated, we hold that the *American Pipe* tolling rule (*supra,* 414 U.S. 538) is unavailable to plaintiff. Specifically, we find that plaintiff and other similarly situated plaintiffs seeking personal injury damages in DES cases may not rely on the *Sindell* class action suit (*supra,* 26 Cal.3d 588) to toll the statute of limitations pursuant to *American Pipe.*[20]

## V. *Conclusion*

The judgment of the Court of Appeal is reversed. The cause is remanded with instructions to affirm the judgment of the trial court in favor of defendants.

Lucas, C. J., Mosk, J., Broussard, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

---

[20] Insofar as *Bangert* v. *Narmco Materials, Inc., supra,* 163 Cal.App.3d 207, is inconsistent with our holding, that case is disapproved.