701 So.2d 344 (1997)
Susan F. WOOD, etc., et al., Appellants,
v.
ELI LILLY & CO., etc., et al., Appellees.
No. 90001.
Supreme Court of Florida.
October 30, 1997.
Ben J. Weaver of Weaver & Weaver, P.A., Fort Lauderdale, for Appellants.
Hugh J. Turner, Jr. and Christopher K. Leigh of English, McCaughan & O'Bryan, P.A., Fort Lauderdale, for Appellee Eli Lilly and Company.
John A. Reed, Jr. and R. Kimbark Lee of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellee The Upjohn Company.
GRIMES, Justice.
We have for review a question of Florida law certified by the Eleventh Circuit Court of Appeals[1] that is determinative of a cause pending in the federal courts and for which there appears to be no controlling precedent. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const.
The facts as set forth by the Eleventh Circuit are as follows. Susan Wood, Bettie Wood, and Jonathan Wood Jr. (plaintiffs) filed suit on March 1, 1988, in Broward County Circuit Court against Eli Lilly and Company and the Upjohn Company, Inc. (defendants). The gravamen of the complaint was that plaintiffs were exposed in utero to the drug diethylstilbestrol (DES) when their mother was pregnant and that their illnesses are linked to their mother's ingestion of the drug.
The defendants removed the action to the United States District Court for the Southern District of Florida. On September 19, 1989, the federal district court dismissed the action because of plaintiffs' inability to identify the manufacturer or manufacturers of the DES ingested by their mother. The plaintiffs subsequently appealed to the Eleventh Circuit Court of Appeals, and while their appeal was pending, this Court announced its decision in Conley v. Boyle Drug Co., 570 So.2d 275 (Fla.1990). Conley held, for the first time in Florida, that the market-share *345 alternate theory could be used in DES cases to apportion liability.
The Eleventh Circuit Court of Appeals vacated the federal district court's order and remanded for reconsideration in light of Conley. On remand, the federal district court granted the defendants' motions for summary judgment against Bettie and Susan Wood based on Florida's four-year statute of limitations.[2] The federal district court held that the plaintiffs knew or should have known of their injuries more than four years before the filing of their complaint on March 1, 1988.[3]
Plaintiffs again appealed to the Eleventh Circuit Court of Appeals, arguing that no cause of action arose for them until the Conley decision was issued and that applying the statute of limitations to bar their claims would violate their right of access to the courts under article I, section 21 of the Florida Constitution.[4] The Eleventh Circuit noted that this was an issue of first impression in Florida and certified the following question to this Court:
IN A NEGLIGENCE ACTION CONCERNING THE DRUG DIETHYLSTILBESTROL ("DES") IN WHICH A PLAINTIFF RELIES ON THE MARKET SHARE THEORY OF LIABILITY TO RECOVER FROM THE DEFENDANTS, AS DESCRIBED IN CONLEY V. BOYLE DRUG CO., 570 So.2d 275 (Fla. 1990), DOES THE STATUTE OF LIMITATIONS COMMENCE RUNNING ON THE DATE THAT CONLEY WAS ISSUED OR ON THE DATE THAT THE PLAINTIFF KNEW, OR REASONABLY SHOULD HAVE KNOWN, OF HER INJURY?
106 F.3d at 376.
In Conley, this Court held that a DES plaintiff who cannot identify the manufacturer responsible for his or her injury may rely on the market-share alternate theory of liability when bringing suit. 570 So.2d at 286. Under this theory of liability, the plaintiff need only establish that the named defendant or defendants produced or marketed the type of DES ingested by the plaintiff's mother and may recover damages proportional to the share of the market occupied by those defendants. Id.
Plaintiffs argue that because they could not locate or identify the manufacturer responsible for their injuries, they did not have a cause of action until the market-share alternate theory of liability was adopted in Conley. Thus, they contend that the applicable four-year statute of limitations did not begin to run until the date when this Court's decision in Conley was issued. Defendants posit that Conley adopted a new theory of liability rather than a new cause of action. Thus, they contend that the four-year statute of limitations began to run on the date when the plaintiffs knew or should have known of their injuries.
Our opinion in Conley did not address the question of when the statute of limitations should begin to run for DES plaintiffs pursuing claims under the market-share alternate theory of liability.[5] However, nothing in Conley or this Court's case law construing the statute of limitations for negligence actions supports the conclusion that the running of the statute of limitations should commence on the date when a new theory of liability is adopted or even when a new cause of action is created.
Though not involving DES, a review of this Court's opinions in Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.1976), and Penthouse North Ass'n, Inc. v. Lombardi, 461 So.2d 1350 (Fla.1984), compels the conclusion that our holding in Conley had no effect on the statute of limitations. *346 In Avila South, this Court recognized for the first time that
any officer or director of a condominium association who has contracted on behalf of the association with himself, or with another corporation in which he is, or becomes substantially interested, or with another for his personal benefit may be liable to the association for that amount by which he was unjustly enriched as a result of his contract.
Avila South, 347 So.2d at 607.
In Penthouse North, the condominium association entered into a long-term lease of recreational property in 1966 at a time when the lessors were also officers and directors of the association. In 1979, after control of the association had been relinquished to the condominium owners, the lessors notified the association of an increase in rent pursuant to an escalation clause in the lease. The association sued the lessors, alleging that they had breached their fiduciary duties by including the escalation clause in the lease without disclosing it to the association members and by using their position to enrich themselves at the expense of the association. Seeking to avoid the defense of the statute of limitations, the association argued that its cause of action for breach of fiduciary duties and unjust enrichment by the former officers and directors did not accrue until Avila South was decided in 1977. In rejecting this contention, this Court stated:
We agree that Avila South had retroactive application. Nevertheless, we disapprove any implication in Burleigh House [Condominium, Inc. v. Buchwald, 368 So.2d 1316 (Fla. 3d DCA 1979)] that Avila South breathed new life into those causes of action previously barred by a statute of limitations or laches. This Court has often changed common-law tort rules or recognized new causes of action without affecting time-barred claims. This may seem unfair to those plaintiffs who would have had viable claims if the change of law had occurred earlier, but potential and actual liability must end with finality at some point. Persons should have the right to conduct their affairs without fear of liability for their actions once an appropriate limitation period has passed.
Penthouse North, 461 So.2d at 1351-52.[6]
Moreover, this Court has held that once a claim is extinguished by the statute of limitations, it cannot be revived as a result of a subsequent court decision, In re Estate of Smith, 685 So.2d 1206, 1210 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 2434, 138 L.Ed.2d 195 (1997), or as a result of legislative action, Wiley v. Roof, 641 So.2d 66, 68-69 (Fla.1994). This is because after an action has been time barred, the defendant possesses a constitutionally protected property interest to be free from that claim.
Plaintiffs' reliance on Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981), is misplaced. That case held that the products liability statute of repose which was then in effect was unconstitutional as applied in a DES case because the statute operated to bar the cause of action before there was any manifestation of injury. In the instant case, there is no suggestion that the statute of limitations began to run before the plaintiffs' injuries became manifest.
We note that the Supreme Court of California reached a conclusion similar to the one we reach today in Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923 (1988), which also involved a plaintiff who suffered injuries caused by exposure to DES while in utero. In order to avoid the defense of the statute of limitations, the plaintiff argued that the statute did not begin to run until the date of the California Supreme Court's decision in Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), which had adopted a market-share theory of liability in DES cases.[7] Rejecting *347 this contention, the court reasoned that rather than creating a new tort or identifying a new product, Sindell merely bridged the gap between DES manufacturers as a group and the plaintiff's injury. Acknowledging that prior to Sindell, the plaintiff's inability to identify the precise manufacturer of the pills ingested by her mother would have caused her lawsuit to be dismissed, the court justified its holding on three grounds, to wit: (1) stagnation in the law is avoided by encouraging people to bring suits to change laws they do not like; (2) the statute of limitations serves the function of protecting defendants; and (3) a different rule would allow virtually unlimited litigation.
We answer the certified question by holding that the statute of limitations for DES negligence actions begins to run on the date the plaintiff knew or should have known of his or her injury rather than on the date that Conley was decided. Having answered the certified question, we return the record to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., concur.
KOGAN, C.J., and ANSTEAD, J., concur in result only.
NOTES
[1] Wood v. Eli Lilly & Co., 106 F.3d 374 (11th Cir.1997).
[2] Jonathan Wood's case is apparently still pending in the federal district court.
[3] The federal district court determined that Bettie Wood was advised in 1978 and Susan Wood in 1976 that there might be a connection between their illnesses and the DES ingested by their mother.
[4] Article I, section 21 of the Florida Constitution states:

The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay.
[5] The plaintiff in Conley filed her action within the four-year statute of limitations period for negligence actions.
[6] While not relevant to the issue at hand, we ultimately ruled for Penthouse North Association on the premise that the cause of action did not accrue until 1979, when the association received notice that the rent escalation clause would be enforced, or in 1981, when the lessors actually demanded the escalated rent.
[7] While the Sindell theory of liability is somewhat different than the market-share alternate theory of liability that we adopted in Conley, Jolly's reasoning and policy rationale are still applicable to the instant case.