Filed 3/3/20

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| LINCOLN UNIFIED SCHOOL DISTRICT et al., | C088857 |
| Petitioners, | (Super. Ct. No. STKCVUNPI20180005509) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| SHYNELLE JONES, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDING in mandate. Petition granted. Elizabeth Humphreys, Judge.

Johnson Schachter & Lewis and Jason M. Sherman for Petitioners.

Weintraub Tobin Chediak Coleman Grodin Law Corporation, Brendan J. Begley, Joshua H. Escovedo, and Zachary S. Thompson for California Association of Joint Powers Authorities as Amicus Curiae on behalf of Petitioners.


1

No appearance for Respondent.

Law Offices of Kenneth N. Meleyco, Kenneth N. Meleyco, and Floyd W. Cranmore for Real Party in Interest.

This proceeding arises out of a minor's collapse during football try-outs at Lincoln High School in Stockton on August 1, 2017. Respondent Shynelle Jones presented a timely claim on behalf of her son, Jayden, to the Lincoln Unified School District under the Government Claims Act (Gov. Code, § 810 et seq.).[1] About four months later, Jones submitted an application to the school district for leave to present a late claim on her own behalf based on her allegedly newfound realization of the severity of her son's injuries, their impact on her own life, and her right to file her own claim. She declared that up until that point she had been able to attend to her own interests. After the application was denied, Jones filed a petition for relief from the claim presentation requirement in the superior court based on the same facts. At the hearing on her petition, her counsel, Kenneth Meleyco, presented a new explanation for the delay in submitting Jones's claim. After the hearing, he filed a declaration explaining that, the day after Jones presented a claim on her son's behalf, she retained Meleyco on her own behalf, and an error in the handling of Meleyco's dictated memo within his office prevented the earlier preparation of Jones's claim. The superior court granted Jones's petition, despite noting "legitimate concerns regarding [her] credibility" because it "determined based on the directives provided in case law, to provide relief from technical rules, that [Jones] has met her burden of proof to demonstrate that her neglect was excusable." This original proceeding followed.

We conclude this ruling was an abuse of the court's discretion. The reason a petitioner submits to justify relief from the claim presentation requirement must be the

---

[1] Undesignated statutory references are to the Government Code.

same as the reason advanced in the underlying application to the public entity. Additionally, the general policy favoring trial on the merits cannot justify the approval of a petition that is not credible and that does not demonstrate a right to relief by a preponderance of the evidence. We shall issue a writ of mandate compelling the superior court to vacate its order and enter a new order denying Jones relief from the claim presentation requirement.

## I. BACKGROUND

Jones, as guardian ad litem on behalf of her son, filed a complaint for gross negligence and negligent misrepresentation against petitioners the Lincoln Unified School District, its superintendent, the principal of Lincoln High School, and the football coach of Lincoln High School (collectively, the District). The complaint alleges that, on August 1, 2017, Jayden collapsed due to extreme exhaustion and dehydration after being denied water at football try-outs and suffered permanent injuries as a result. The complaint alleges compliance with the Government Claims Act. On November 8, 2017, Jones had sent a claim to the school district on her son's behalf. This proceeding concerns Jones's attempt to present a claim on her own behalf.

On March 2, 2018, Jones applied to the school district on her own behalf "for leave to present a late claim founded on a cause of action for personal injury, which accrued on or about August 1, 2017, for which a claim was not presented within the six-month period provided by [] section 911.2[, subdivision ](a)." The application stated: "It now appears that [Jayden] will have life-long problems. His mother . . . , because of the affect [*sic*] that she now realizes this will have on her life, which she did not understand originally, now requests permission to file a late claim for <u>her</u> injuries as a result of the incident on August 1, 2017. The other circumstances concerning the reasons for the late claim are contained in her declaration." The application attached what it termed a "proposed claim" that stated Jones "did not file a claim within the prescribed time . . . because she did not realize the degree of injuries that her son . . . has and will suffer."

3

Jones submitted a declaration explaining: "Initially I did not file a claim because I believed that [Jayden] would recover from his injuries. I was so upset and concerned about him I never gave any thought of myself until this time. My life was a whirlpool of [h]ospitals, [d]octors, issues concerning his health, and the need for me to work to support us. I moved in with my mother because of all this. As of now he has not [*sic*] and has developed physical and mental issues. I believe that he may be permanently injured, but, of course, I am hoping that he recovers. My time is now spent taking him from one [d]octor's office to another and to physical therapy. I am Jayden's sole caretaker . . . . Now, when I think back at this time, []from his injury until now I realized I was not functioning properly in looking out for me as opposed to [Jayden]." Jones added, "I was unaware of my right to even file a claim until recently because I was so involved in [Jayden]'s care." The memorandum of points and authorities submitted in support of the application made no reference to the factual basis for relief, but briefed the legal concept of "[m]istake, inadvertence, surprise or excusable neglect." (§ 911.6, subd. (b)(l).)

Jones's application was deemed denied on the 45th day when the school district did not act on it. (§ 911.6, subd. (c).)

In July 2018, Jones filed a petition for relief from the claim presentation requirement in superior court based on mistake, inadvertence, surprise, or excusable neglect. The petition explained "[t]he reason for the late claim was because [Jones] was unaware of the nature and extent of injuries suffered by her son as a result of the dehydration until the passage of time when the full extent of the injuries manifested themselves. These reasons are set forth in the attached Claim and the declaration of [Jones]." The application Jones submitted to the school district, including her declaration in support thereof, was attached to the petition.

The District filed an opposition arguing Jones had not established excusable neglect. The District submitted evidence of a social media post by Jones shortly after the

4

incident to support its assertion that Jones had been aware of the extent of her son's injuries and its effect on her personal finances. In the post, dated August 3, 2017, Jones states: "This unexpected tragedy has put a strain on my family emotionally and financially. I have started a GoFundMe account to help alleviate some of the financial burden of the medical bills resulting from this one[-]week hospital stay. I have been unable to work and support my family as I normally do."

The court issued a tentative ruling denying Jones's petition on the grounds she had failed to demonstrate that her neglect was excusable. The court found Jones was aware that the injuries suffered by her son were causing her financial problems of some significance shortly after they occurred and that she had been thinking of these problems. Further, the court explained Jones's declaration "is undermined by her actions. She hired an attorney to file a Claim on behalf of her son, started a GoFundMe account, posted on Facebook about her inability to work and support her family, and gave several television interviews regarding her son." The court found "[t]he Petition fail[ed] to reveal any act of diligence of [Jones] or her attorney to ascertain the full nature and extent of her injuries. There [was] no mention of the actions taken by [Jones] to ascertain her injuries." The court also found "[t]here [was] no showing that . . . counsel was otherwise diligent in investigating and pursuing [Jones's] claim."

After oral argument, the court ordered Jones to file a declaration and additional briefing. Meleyco submitted a declaration stating he was retained by Jones on August 21, 2017, to file a lawsuit against the District on behalf of her son. He describes his "habitual custom and practice, to dictate an extensive memo to the file after speaking with a client which is then transcribed by the legal secretary." He continued: "In cases involving the Government [C]laim[s] [A]ct, the memo is utilize[d] to provide a factual background for the claim. Normally, the assigned secretary or perhaps other staff person, will draft the claim immediately, return the file to my desk and we send it out immediately. I have been in private practice for many years representing personal injury [plaintiffs] and I

cannot think of one instance where I did not dictate a memo following someone signing a fee agreement."

In this case, however, Meleyco wanted to meet Jayden before submitting his claim: "Accordingly, my staff electronically calendared what I understood to be the last day to file [Jayden]'s claim for January 29, 2018, based on his injury on August 1, 2017. [¶] We did not calendar any claim due date for []Jones, because there was no need—I had not evaluated, at that time, that she had any appreciable injuries of her own or claim for damages thereon. Nor had she retained me to represent her."

Meleyco was not able to meet with Jayden until October 12, 2017: "Pursuant to my practice, I dictated a further memo regarding that interview with him for [the] file. This memo was transcribed and [the] file returned to me with a draft claim." The claim was signed by Meleyco on November 8, 2017.

Meleyco declared that, the next day, Jones called him and then came to see him. She was distraught because her employment had been terminated. Jayden's doctors "were also increasingly indicating to her that he may have permanent disabilities." Meleyco "then evaluated, <u>at that point</u>, on November 9, 2017, that []Jones now had an appreciable claim for injuries of her own. And so, on November 9, 2017, she retained me to file a claim for her too. As per my habitual custom and practice, I dictated a memo of my interview with her. In the dictation, I, pursuant to custom and practice, would have stated that a claim needed to be filed. So, in the dictation to the secretary, there would be an instruction . . . to return the file to my desk for the preparation of the claim. But, as I have now learned, the memo from the Nov. 9 meeting was not transcribed[,] or if it was, it was not placed in the correct file and/or misfiled. In any event, I never received the file back 'on my desk' with that memo which would have then to [*sic*] triggered my completion of the preparation for her Government Claims Act claim."

Meleyco's office also did not calendar the deadline for submitting Jones's claim: "This would have been by the secretary per the memo" that he never received back.

6

Meleyco declared:  "At the time[,] my office had two experienced legal secretaries and one legal assistant in training.  One of those secretaries had been with me for many years, the other was relatively new, replacing another long[-]term secretary.  Indeed, I eventually had to let that 'new' secretary go, due to a series of consistent problems.  [¶] At that point, my office had never mis-filed a claim for a client, and typically . . . we file them early, given my habitual custom and practice . . . ."

Meleyco declared:  "I still do not know exactly what happened, but when the date calendared for the last day to file [Jayden]'s claim rolled around, my staff and I had apparently forgotten that *now* we also represented . . . Jones, not just her son.  My initial memo[s] are utilized by the staff to do many things—order medical records, order police reports, hire experts, calendar statute of limitations, calendar court dates (if the file is already in litigation), etc.  There are countless instructions and the plan for the case is often included.  Instead, through some mistake, inadvertence, or neglect, in some combination of secretarial error and calendaring error, my office did not follow my habitual custom and practice, and instead, the claim for []Jones was not submitted."

Meleyco also said he did not know how this mistake was uncovered:  "[S]omeone in the office then further investigated, I do not recall why if I ever knew, and as a result, we realized a claim had not been filed immediately for []Jones, as per my habitual custom and practice."

Meleyco explained the circumstances that led to his submitting a new theory of mistake, inadvertence, or excusable neglect:  "On October 19, 2018, when meeting at approximately 8:20 AM before the court hearing on this matter with []Jones, I first realized that Ms. Jones had retained me on November 9, 2017, . . . because she reminded me about this.  I realized then that it was my and my . . . office's mistake, inadvertence or excusable neglect in failing to file the claim on or before January 29, 2018[,] and not Ms. Jones for retaining me after the date. . . . [¶] . . . I advised the court on October 19, 2018[,] at the hearing and, as a result, this Court allowed this additional declaration and

7

points and authorities relative to attorney mistake, neglect, inadvertence, or excusable neglect." Meleyco's declaration attached a redacted fee agreement showing Jones retained him on November 9, 2017.

The superior court granted Jones's petition. The court explained, "While the [District is] correct that the attorney's [current] excusable neglect theory was not presented until after the passage of the one-year statute of limitations, the original Application was still based upon the claim of excusable neglect and filed within the one-year deadline. It is clear that the theory presented to the Court for the 'excusable neglect' has changed dramatically from the initial moving documents and was not set forth in [Jones]'s Application for Leave to Present Late Claim that she submitted to the [school district] as required by [section] 911.4[, subdivision ](b). The parties have not cited to the court and the court has been unable to locate any legal authority that addresses directly whether the specific factual grounds for excusable neglect must be stated in a Petitioner's Application for Leave to Present Late Claim or whether it is sufficient to claim 'excusable neglect.' [The District] raise[s] legitimate concerns regarding [Jones]'s credibility given the evolving facts presented to support the claim of excusable neglect. After reviewing and weighing the evidence presented, the Court has determined based on the directives provided in case law, to provide relief from technical rules, that [Jones] has met her burden of proof to demonstrate that her neglect was excusable."

The District filed a petition for writ of mandate or other appropriate relief in this court challenging the superior court's order. We issued an order to show cause.

## II. DISCUSSION

A.   *Government Claim Presentation Requirements*

No suit for damages may be maintained against a public entity unless a written claim has first been presented to it. (§ 945.4.) A claim for personal injury must be presented "not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) "When a claim . . . is not presented within that time, a written application may

8

be made to the public entity for leave to present that claim." (§ 911.4, subd. (a).) "The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).) "Accrual of the cause of action for purposes of [these statutes] is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208-209, superseded by statute as stated in *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914; see § 901.)

As relevant to this proceeding, "The board shall grant the application where one or more of the following is applicable: [¶] (1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim . . . ." (§ 911.6, subd. (b).)

"If an application for leave to present a claim is denied or deemed denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4." (§ 946.6, subd. (a).) The petition must show "[t]he reason for failure to present the claim within the time limit specified in Section 911.2." (§ 946.6, subd. (b)(2).) The court must grant a petition for relief from the claim requirement "if the claimant demonstrates by a preponderance of the evidence the application to the public entity under . . . section 911.4 was made within a reasonable time not exceeding one year after the accrual of the cause of action, and one of the other four requirements listed in . . . section 946.6, subdivision (c) is met." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1777.) One of the requirements is that "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim . . . ."[2] (§ 946.6,

---

[2] The issue of prejudice has not been raised in these original proceedings.

9

subd. (c)(1).) "Excusable neglect is 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.' " (*Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 476.) "In determining whether relief is warranted, the court will consider the petition, any affidavits submitted in support of or in opposition to the petition, and any other evidence presented at the hearing." (*Munoz, supra,* at pp. 1777-1778; see § 946.6, subd. (e).)

B. *Standard of Review*

"The decision to grant or deny a petition seeking relief under section 946.6 is within the sound discretion of the trial court and will not be disturbed on appeal except for an abuse of discretion." (*Bettencourt v. Los Rios Community College Dist*. (1986) 42 Cal.3d 270, 275.) "Furthermore, we review de novo, or independently, a trial court's decisions on questions of law, such as construction of a statute and whether a claim is barred by a statute of limitations." (*City of San Diego v. Superior Court* (2015) 244 Cal.App.4th 1, 9.) " 'In construing any statute, we first look to its language. [Citation.] "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." [Citation.] "If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" [Citation.]' [Citation.] Also, a statute ' "must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' [Citations.] A court may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and

direct import of the terms used.' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

*C. Accrual*

In her return, Jones asserts she submitted a timely claim. While it is possible, as she notes, to present a claim to a public entity alongside an alternative application for leave to present a late claim, Jones did not do so here. (E.g., *Mandjik v. Eden Township Hospital Dist.* (1992) 4 Cal.App.4th 1488, 1500.) The application Jones submitted for leave to present a late claim stated that her claim "accrued on or about August 1, 2017," and attached what she termed a "proposed claim" that itself stated it was not timely. Likewise, her petition for relief from the claim presentation explained "[t]he reason for the late claim."[3] It was not until her reply brief that she first mentioned accrual. The superior court did not address these points in its ruling. In this original proceeding, Jones now argues accrual was delayed based on her counsel's later discovery of an alleged cover-up by the District of its lack of adherence to best practices for athlete safety. We conclude the issue is not before us. (See *Santee v. Santa Clara County Office of*

---

[3] The general rule is that an action accrues on the date of injury. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.) Under the discovery rule, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." (*Ibid.*) Nonetheless, "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." (*Ibid.*) Thus, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Id.* at p. 1110.) "Wrong" is not used in a technical sense, "but rather in accordance with its 'lay understanding.' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397-398.) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly, supra*, at p. 1111.) Were we to reach the issue, we would conclude that Jones has not established the discovery rule applies to this action.

*Education* (1990) 220 Cal.App.3d 702, 712 [issue of timely filing of claim was before court of appeal where "appellants raised the issue first in their reconsideration motion, argued it fully in the trial court, and submitted it to [the appellate court] without reservation or argument that the issue remains pending below"].) We thus turn to the issues that were addressed by the superior court.

D.     *"The Reason" for Presenting Jones's Late Claim*

The District, in its petition, challenges the superior court's apparent conclusion that an application for leave to present a late claim to a public entity need not state the specific factual grounds for relief but may state only "excusable neglect." We also note that the petition for relief from the claim presentation requirement in the superior court shall show "[t]he reason for failure to present the claim within the time limit specified . . . ." (§ 946.6, subd. (b)(2).) Jones argues "the reason" for the delay in presenting the claim that must be stated under 911.4, subdivision (b) in an application for leave to present a late claim and shown under section 946.6, subdivision (b) in a petition for relief from the claim presentation requirement must be one of the "exclusive, laundry list of the <u>only</u> legislatively allowed 'reason[s]' " including "mistake, inadvertence, surprise, or excusable neglect." (See §§ 911.6, subd. (b)(1), 946.6, subd. (c)(1).) We disagree. A public entity shall grant an application and the court shall relieve a petitioner from the claim presentation requirements where, as applicable to these proceedings, "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect." (§§ 911.6, subd. (b)(1), 946.6, subd. (c)(1).) Neither set of statutes states that these are "reasons." Rather, as we will explain, they are conclusions that the public entity or court may reach that would then necessitate relief.

Section 911.4 and the requirement that an application to the public entity "state the reason for the delay in presenting the claim" was enacted in 1963. (Stats. 1963, ch. 1715, § 1, p. 3376.) Before then, "[t]he existing procedure under the local public entities claims statute require[d] a court proceeding to obtain leave to present a claim after the time

12

prescribed." (4 Cal. Law Revision Com. Rep. (1963) p. 1010.) Section 946.6 was enacted in 1965 and established a procedure for obtaining relief from having to present any claim at all. (Stats. 1965, ch. 653, § 22, p. 2016.)

We take judicial notice sua sponte of the definitions in place at the time these statutes were enacted.[4] (See Evid. Code, § 451, subd. (e) [judicial notice shall be taken of "[t]he true signification of all English words and phrases and of all legal expressions"].) A reason is: "1a: an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure . . . b: a consideration, motive, or judgment inducing or confirming a belief, influencing the will, or leading to an action or course of action: a rational ground or motive . . . c: a sufficient ground of explanation or of logical defense; *esp*: a general principle, law, or warranted presumption that supports a conclusion, explains a fact, or validates a course of conduct . . . d: the thing that makes some fact intelligible: CAUSE." (Webster's 3d New Internat. Dict. (1961) p. 1891, col. 3.)

We explained the usage of the word "reason" in a different statutory context in *Bryant v. State Personnel Board* (1950) 96 Cal.App.2d 423. There, we interpreted section 19173, which then provided: "Any probationer may be rejected by the appointing power during the probationary period *for reasons* relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility. [¶] Notice of rejection accompanied by a statement of the specific *reasons* therefor, truthful within the knowledge of the appointing power or other

---

[4] The District requested that we take judicial notice of the definition of "reason" taken from an online version of the Merriam-Webster Dictionary. " 'The dictionary is a proper source to determine the usual and ordinary meaning of words in a statute.' " (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 433.) Nonetheless, we decline the District's request because "relevant dictionary definitions are those extant before or at least near in time to the statutory or contractual usage." (*Id*. at p. 434.)

officer or person in charge of the employee, shall be filed by the appointing power with the board and a copy served upon the probationer to give effect to the rejection." (former § 19173; see *Bryant, supra,* at p. 425.) In *Bryant*, the petitioner had received a notice of rejection that stated, " 'The reasons for the rejection are the good of the service and failure to demonstrate merit and fitness.' " (*Bryant, supra,* at p. 425.) This court explained, after setting forth definitions of "reason," "it is apparent from a reading of the code section that justification for the rejection of a probationary employee, lies not in the appointing power's conclusion, as in the present case, that the action is for 'the good of the service and failure to demonstrate merit and fitness' or that 'the conduct and actions' were unbecoming to such an employee. Rather the justification therefor lies *in the factual reasons which support or justify such conclusion* by said appointing power that the rejection of the employee would be for the good of the service. In other words, while the notice of rejection undoubtedly stated a good *cause* for removal such a statement is not an adequate 'statement of the *specific reasons* therefor' as contained in said section." (*Id.* at p. 426, first emphasis added.)

Similarly, in the context of reviewing a ruling on a petition for relief from the claim presentation requirement, it has been explained that "[t]he mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard. The definition of excusable neglect is defined as 'neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.' " (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293.) In other words, the "reason" for the delay in presenting the claim that must be stated under 911.4, subdivision (b) in an application for leave to present a late claim to the public entity and shown under section 946.6, subdivision (b) in a petition for relief from the claim

14

presentation requirement to the court, is the factual basis that would justify the conclusion that the delay was based on mistake, inadvertence, surprise or excusable neglect.

As set forth above, an application for leave to present a late claim must be presented to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).)  Courts have explained that "[f]iling a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition.  [Citation.]  When the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under . . . section 946.6." (*Munoz v. State of California, supra,* 33 Cal.App.4th at p. 1779.)  The District contends the superior court also does not have jurisdiction to grant relief under section 946.6 based on reasons never stated in the underlying application.  The authorities relied upon by the District do not so hold.  This does not, however, mean that a court may grant relief in such a situation.

Jones relies upon section 946.6, subdivision (e), which provides:  "The court shall make an independent determination upon the petition.  The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition." We agree that this provision allows for the presentation of additional evidence at the hearing.  Jones also argues additional *reasons* may be presented to the superior court at this time.  The plain language of the statute does not support this reading.  Further, the fact that the court's determination is independent (or de novo) does not mean there is no relationship between the reason presented to the court and the reason presented to the public entity.  As Jones acknowledges, the statutes governing applications to the public entity and the statute governing petitions to the superior court contain parallel and identical language.  We now shift our focus from the meaning of "reason" to the effect of the definite article that proceeds it.

15

Sections 911.4 and 946.6 both include the requirement of the presentation of "the reason" rather than "a reason." (§§ 911.4, subd. (b), 946.6, subd. (b)(2).) "Use of the indefinite articles 'a' or 'an' signals a general reference, while use of the definite article 'the' (or 'these' in the instance of plural nouns) refers to a specific person, place, or thing." (*Pineda v. Bank of America, N.A*. (2010) 50 Cal.4th 1389, 1396; see also *CD Investment Co. v. California Ins. Guarantee Assn*. (2000) 84 Cal.App.4th 1410, 1421 [" 'In construing [a] statute, [the] definite article "*the*" particularizes the subject which it precedes and is [a] word of limitation as opposed to [an] indefinite or generalizing force [such as] "*a*" or "*an*" ' "].) Thus, the statutes both refer to a specific reason. By doing so, they refer to the same reason. The language and structure of the statutes thus require that "the reason" offered to the superior court and to the public entity be the same.

While resort to legislative history is unnecessary to our analysis, we note this construction is necessary to achieve the legislative purpose of the statutes. While our Supreme Court has recognized that " '[t]he 1963 legislation is remedial and should be liberally construed' " (*Viles v. State* (1967) 66 Cal.2d 24, 31), and "[t]he policy favoring trial on the merits is the *primary* policy underlying *section 946.6*" (*Bettencourt v. Los Rios Community College Dist., supra,* 42 Cal.3d at p. 276, italics added), the procedures for presenting an application for leave to file a late claim to the public entity have another specific purpose. In recommending the original 1963 legislation, the Law Revision Commission explained court proceedings to obtain leave to present a claim "could be avoided in many cases by requiring the claimant or his representative to make application in the first instance to the public entity to present the late claim. The Commission is hopeful that the public entity will grant this application in the great majority of cases where the claimant meets the statutory requirements for presenting a late claim. Only if the public entity denies the application should a court proceeding be required." (4 Cal. Law Revision Com. Rep. (1963) p. 1010.) In other words, "[t]he purpose of allowing applications for leave to file late claims is to give the public entity an opportunity to

16

examine petitioners' reasons for not filing timely claims and to allow the public entity to grant the applications where the reasons are meritorious, thereby eliminating unnecessary litigation." (*Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 9.) The public entity has no opportunity to examine a petitioner's reasons if they are not provided or if they are subsequently changed. The use of the phrase "the reason" in this context is deliberate—it requires that the reason remain the same in both proceedings. We may not adopt a construction of the statutes that violates their plain language and the specific purpose of creating a procedure that shifts the burden of deciding whether leave to present a late claim should be granted to public entities. While additional evidence can be supplied to support the reason provided, at both stages the question is whether the reason and the evidence were sufficient to show excusable neglect.

The superior court stated "[i]t is clear that the theory presented to the Court for the 'excusable neglect' has changed dramatically from the initial moving documents and was not set forth in [Jones]'s Application for Leave to Present Late Claim." As set forth above, the court framed the question as whether the specific factual grounds for excusable neglect must be stated in the application for leave to present a late claim or "whether it is sufficient to claim 'excusable neglect.' " As we have explained, we disagree with the court's apparent conclusion that claiming no more than excusable neglect is sufficient. But the court obscured the true question presented by this proceeding. Jones did present the same reason in her petition and in her underlying application. What is unique about this proceeding is that she introduced additional evidence—which is itself permissible—but that evidence pertained to a reason that was not contained in—and contradicted—her moving papers in the superior court and her underlying application to the public entity.

Jones declared under penalty of perjury on February 28, 2018, that she "was unaware of [her] right to even file a claim until *recently* because [she] was so involved in [Jayden]'s care." (Italics added.) She said, "from his injury until *now* I realized I was not

17

functioning properly in looking out for me as opposed to [Jayden]." (Italics added.) Meleyco, on the other hand, declared under penalty of perjury that Jones was aware of her right to file a claim on her own behalf the day after she filed a claim on behalf of her son—which was almost four *months* earlier. She came to his office, and he "then evaluated, <u>at that point</u>, on November 9, 2017, that []Jones now had an appreciable claim for injuries of her own. And so, on November 9, 2017, she retained [him] to file a claim for her too." It was only after the court indicated its intent to reject Jones's explanation based on the District's submission of contradictory evidence that Meleyco offered a different explanation. And his new explanation requires us to believe he prepared an application for leave to present a late claim without knowing why it was late or that his critical memorandum was missing, and it took him almost eight more months (during which time he prepared more pleadings on the matter) to learn what he now contends was the truth that was readily discernable from his fee agreement all along.

The superior court found the District had raised "legitimate concerns regarding [Jones]'s credibility given the evolving facts presented to support the claim of excusable neglect," yet it explained, "[a]fter reviewing and weighing the evidence presented, the Court has determined based on the directives provided in case law, to provide relief from technical rules, that [Jones] has met her burden of proof to demonstrate that her neglect was excusable." The court appears to have not evaluated the evidence because it believed public policy favored relief. That was an abuse of discretion. "[T]he trial court's discretion to grant relief is not 'unfettered.' [Citation.] It is ' "to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Bettencourt v. Los Rios Community College Dist., supra,* 42 Cal.3d at p. 275.) "The general policy favoring trial on the merits cannot be applied indiscriminately so as to render ineffective the statutory time limits." (*Department of Water & Power v. Superior Court, supra,* 82 Cal.App.4th at p. 1293.) Nor may the superior court's exercise of discretion be applied to eliminate the statutory

18

requirement that the reason supporting a claim of excusable neglect be submitted to the public entity or the petitioner's burden of proof.

Jones may not advance a factual theory of excusable neglect that was entirely different from the one she previously presented to the public entity, and she did not demonstrate the truth of her original theory by a preponderance of the evidence. The trial court's decision to grant Jones relief from the claim presentation requirement under these circumstances was error.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order granting Shynelle Jones relief from the claim presentation requirement, and to enter a new order denying relief.

Petitioners shall recover their costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)


/S/

———————————————
RENNER, J.


We concur:


/S/

———————————
RAYE, P.J.


/S/

———————————
BUTZ, J.

19