Filed 8/5/24  Solar-Tec Systems v. Sunpower North America CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| SOLAR-TEC SYSTEMS, INC., |  |
| Plaintiff and Appellant, | G063003 |
| v. | (Super. Ct. No. 30-2020-01161650) |
| SUNPOWER NORTH AMERICA, LLC, et al., | O P I N I O N |
| Defendants and Respondents. |  |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Strickroth, Judge.  Affirmed.

Manning Construction Law and Kimberly J. Manning for Plaintiff and Appellant.

Hemar, Rousso & Heald and Christopher D. Crowell for Defendants and Respondents.

\*          \*          \*

Plaintiff Solar-Tec Systems, Inc. was a dealer that installed leased solar equipment for homeowners and secured the initial lease agreement for defendant SunPower Capital, LLC (SPC), the lessor, and the homeowner, the lessee. Plaintiff and defendant SunPower North America, LLC (SPNA) were parties to dealer agreements. Those agreements required plaintiff to bring any claims relating to the dealer agreements or plaintiff's relationship with SPNA within one year from the date plaintiff knew or should have known of facts giving rise to its claims.

According to plaintiff, it spent a lot of money to market and obtain leases in an area inhabited by Chinese residents. It did so, in part, by hiring a Chinese-speaking employee, En Chong. After some time, several of the homeowners cancelled their leases with plaintiff. In 2016, plaintiff learned that its leases, which were originated by "Ann Chong," were transferred to another dealer via a person named "En Chong." In 2020, plaintiff filed the underlying action alleging SPNA improperly allowed Chong to transfer 11 of plaintiff's leases to a competing dealer.

The court granted summary adjudication on all of plaintiff's causes of action against SPNA and found the claims were barred by the one-year limitations period contained in the dealer agreements. The court suggested plaintiff could have discovered SPNA's alleged wrongful acts in 2016. The court further granted summary adjudication on all claims against SPC because it had no contractual relationship or dealings with plaintiff.

Plaintiff contends the court erred because there were triable issues of fact as to its discovery of SPNA's involvement. According to plaintiff, there was evidence SPNA concealed its involvement in transferring the leases to a competing dealer, and plaintiff did not discover SPNA's

involvement until 2019.  For the reasons below, we disagree and affirm the judgment.

FACTS

*Plaintiff's Former Business Relationship with SPNA*

In 2015 and 2016, plaintiff and SunPower Corporation, Systems entered into agreements whereby plaintiff could earn fees by originating solar leases between homeowners and a SunPower Corporation, Systems affiliate[1] and by installing the leased systems. Plaintiff was required to use a "partner portal" to generate any lease proposals or lease agreements.

From 2015 to 2017, plaintiff and SPNA entered into two residential dealer agreements and two commercial dealer agreements (the Dealer Agreements).  The Dealer Agreements included some version of the following limitations provision:  "Except for Dealer's indemnification obligations under this Agreement and except for claims arising from Dealer's non-payment or underpayment of amounts it owes SunPower, any and all claims arising out of or relating to this Agreement or SunPower's relationship with Dealer will be barred unless a legal proceeding is commenced within one year from the date on which the party asserting the claim knew or should have known of the facts giving rise to the claims."

In September 2015, plaintiff hired En Chong as its independent sales representative.  In May 2016, several homeowners cancelled their SPNA solar leases that Chong had secured for plaintiff.  Eleven leases were ultimately cancelled with the last cancellation occurring on September 13, 2016.

---

[1] SPC is a SunPower Corporation, Systems affiliate.

3

*Plaintiff's Complaint*

Plaintiff commenced the instant action on September 23, 2020, and filed the operative first amended complaint (FAC) against SPNA in 2021. The FAC did not name SPC as a defendant.

According to the FAC, SPNA improperly allowed Chong to cancel 11 residential leases originated by plaintiff and to transfer those leases to a competing dealer, American Greenergy Company (AGC). In 2018, plaintiff's owner and chief executive officer, Ed Shaffer, allegedly learned that Chong had asked for and received documentation regarding the 11 cancelled leases. Shaffer became suspicious and called the 11 clients, but they only spoke Chinese so he could not understand them. The FAC alleged Shaffer discovered SPNA's involvement in the improper lease transfers in 2019 when he pretended to be SPNA's client and called the clients who had cancelled, SPNA, and AGC. Through these phone calls, Shaffer allegedly learned that an AGC employee was working with Chong and the 11 leases had been transferred to another SPNA distributor. As a result of the lease transfers, the FAC alleged plaintiff lost $350,000 in labor costs, materials, and supplies that it had invested into the leases.

The FAC also alleged SPNA allowed Chong to input "incorrect shading analyses" for certain leases into SPNA's design tool. The incorrect input apparently inflated the systems' expected energy production, resulting in artificially low quoted lease payments and requiring plaintiff to incur expenses to remedy the issues and to compensate SPNA for the production shortfalls. The FAC accordingly alleged causes of action for: (1) fraud; (2) conversion; (3) common count for money had and received; (4) common count for open book account; (5) breach of fiduciary duty based on fraud; (6) breach of fiduciary duty based on negligence; (7) breach of contract;

4

(8) breach of the implied covenant of good faith and fair dealing; (9) negligent misrepresentation; (10) negligence; and (11) declaratory relief.

*Defendants' Motion for Summary Adjudication*

In March 2023, defendants moved for summary adjudication of all the claims in the FAC.[2] Among other things, they argued plaintiff's claims against SPC had no merit because SPC and plaintiff never had any contractual relationship or dealings. They also argued all the claims against SPNA were barred by the one-year limitations period contained period in the Dealer Agreements. They suggested plaintiff knew or should have known of the facts giving rise to its claims when the last solar lease was cancelled on September 13, 2016, and therefore the one-year limitations period expired in September 2017. To the extent the causes of action arose from plaintiff's alleged work to remedy electrical production shortfalls, defendants argued Shaffer and plaintiff's director of sales knew in 2015 or 2016 that Chong had used SPNA's partner portal to input inaccurate shading information. Defendants emphasized that plaintiff allegedly completed the remediation work by July 20, 2016, so the one-year limitations period expired in July 2017.

In support of their motion, defendants provided evidence of plaintiff's knowledge of events in July 2016—before the last solar lease was cancelled in September 2016. In a declaration, SPNA's senior regional sales manager, Derek Girling, indicated plaintiff had contacted him to discuss the

---

[2] Defendants also moved for summary adjudication of some claims in their cross-complaint. We need not address the cross-complaint because it is not at issue in the instant appeal.

cancelled leases in July 2016. Around July 21, 2016, at plaintiff's request, Girling searched SPNA's database and found identical accounts for some homes for both plaintiff and another SPNA dealer.[3] Plaintiff's accounts were originated by "Ann Chong" while the other dealer's accounts were originated by "En Chong." Girling testified he informed Shaffer and plaintiff's director of sales, and they confronted Chong who denied originating any leases under the "En Chong" name. Around the same time, plaintiff's director of sales sent an e-mail to Girling stating he did not believe Chong's denial of responsibility for the duplicate leases and cancellations. Plaintiff subsequently sued Chong and AGC in August 2017 but did not name SPNA or SPC as defendants in the case.

*Plaintiff's Opposition to the Motion for Summary Adjudication*

In its opposition, plaintiff argued, inter alia, that the limitations period did not bar its action because the discovery rule and defendants' purported fraud tolled the limitations period. According to plaintiff, SPNA secretly transferred the leases to another dealer and did not disclose it had agreed "to 'cut [plaintiff] out of the new market.'" While plaintiff acknowledged it "was aware something was wrong" when the leases were cancelled in September 2016, it argued SPNA lied and denied any involvement in cancelling or transferring the leases. Plaintiff claimed it did not learn about SPNA's involvement until 2019.

In support of its opposition, plaintiff provided Shaffer's declaration. Shaffer testified plaintiff did not have access to SPNA's partner

---

[3] The other dealer was Green Engineering Solar Company, which later changed its name to AGC.

6

portal after the 11 leases were cancelled because SPNA abruptly closed the portal. As a result, he suggested plaintiff did not have access to relevant files and could not discover SPNA's involvement in diverting the leases to another dealer. Shaffer also testified that Girling told him in 2016 that SPNA "'would never violate a lease agreement and give the system to a third party in order to avoid a lawsuit.'" Likewise, Shaffer relied on a July 21, 2016 e-mail from Girling to Chong stating SPNA would "not allow sales reps to sell leases for one dealer then transfer them to another." Girling forwarded that e-mail to plaintiff's director of sales. According to Shaffer, he realized he was duped when he was "browsing around Google Earth" in 2019 and saw "what appeared to be a SunPower system at one of the cancelled lease locations." He noted he was trying to obtain serial numbers to confirm the systems at the 11 locations belonged to SPNA.

*The Court's Order Granting the Motion for Summary Adjudication*

In May 2023, the court granted summary adjudication in defendants' favor on all of plaintiff's causes of action. As to SPNA, the court held that all of plaintiff's claims were time-barred. First, the court relied on the Dealer Agreements, which included one-year limitation provisions. The court noted plaintiff pointed to a different 2014 agreement, but the court found the agreement was irrelevant to the limitations analysis because it was between plaintiff and a nonparty, SunPower Corporation Systems.

Second, the court held SPNA had met its burden of showing plaintiff's claims were untimely and plaintiff had failed to show a triable issue of material fact. The court noted the last lease was cancelled in September 2016 and plaintiff acknowledged it "'knew something was wrong' in 2016." The court also emphasized that SPNA told plaintiff in July 2016

7

that Chong had originated duplicate accounts with another dealer, which resulted in the cancellation of plaintiff's leases. While plaintiff argued it did not discover SPNA's involvement until 2019 when Shaffer reviewed images on Google Earth, the court found that plaintiff "fail[ed] to show it could not have discovered [SPNA's] alleged wrongful acts with reasonable diligence in 2016." The court explained: "The information undisputedly provided to [p]laintiff in 2016 gave [p]laintiff actual or constructive notice of the alleged scheme which is the basis for the FAC. Plaintiff fails to demonstrate that viewing the Google Earth images in 2019 provided new information regarding [SPNA's] liability which was not known to [p]laintiff in 2016 or could not have been discovered with reasonable diligence at that time." To the extent plaintiff's claims were based on work plaintiff did to remedy electrical production shortfalls due to Chong's "'shading value fraud,'" the court found these allegations were also time-barred. The court noted plaintiff "was aware of shading value issues" involving Chong in 2015 or 2016 and plaintiff had not presented any evidence of delayed discovery regarding the work it performed to remedy these issues.

Finally, as to SPC, the court assumed SPC was properly substituted as a Doe defendant even though the clerk had rejected plaintiff's prior request to substitute SPC as a Doe defendant. The court then granted summary adjudication in SPC's favor on all the causes of action because SPC and plaintiff had no relationship or dealings.[4]

In June 2023, the court entered judgment in favor of defendants on all of the claims in the FAC. Plaintiff timely appealed.

---

[4] The court also granted summary adjudication in SPNA's favor on some claims in its cross-complaint against plaintiff. Plaintiff does not appeal this portion of the court's ruling.

8

# DISCUSSION

Plaintiff does not appeal the court's ruling granting summary adjudication in SPC's favor and instead focuses on the portion of the ruling concerning SPNA. Plaintiff contends the court erred by finding its claims against SPNA were time-barred because there were triable issues of fact as to its discovery of the claims and SPNA's alleged fraud. The court did not err. Plaintiff was on inquiry notice in 2016 that the leases were transferred to another dealer and SPNA had these transfers noted in its internal database. The one-year limitations period accordingly expired in 2017.

*Standard of Review*

"'A defendant making the motion for summary adjudication has the initial burden of showing that the cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. [Citations.] If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers establish a prima facie showing that justifies a judgment in the defendant's favor, the burden then shifts to the plaintiff to make a prima facie showing of the existence of a triable material factual issue.

"In reviewing an order granting summary adjudication, 'we apply the same standard of review applicable on appeal from a grant of summary judgment. [Citation.] Accordingly, '". . . we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] '"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." [Citation.] We liberally construe the evidence in support of

9

the party opposing summary [adjudication] and resolve doubts concerning the evidence in favor of that party. . . .”’”’” (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th at 945, 951.)

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 (*Jolly*).)

*Limitations Period*

As noted *ante,* the FAC alleged numerous causes of action with varying limitations period. (Code Civ. Proc., § 338 [three-year limitations period for fraud and conversion]; Code Civ. Proc., §§ 343, 338, subd. (d) [three or four-year limitations period for breach of fiduciary duty]; Code Civ. Proc., § 337 [four-year limitations period for breach of written contract].) But under the Dealer Agreements, the parties agreed plaintiff had to commence any claims arising out of the agreement or its relationship with SPNA within one year from the date it knew or should have known of facts giving rise to the claims. On appeal, plaintiff does not appear to dispute the one-year limitations period governs its claims or suggest another limitations period should apply.

The statute of limitations begins to run when the cause of action accrues. (Code Civ. Proc., § 312; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).) A cause of action generally accrues when it "is complete with all of its elements [citation] . . . ." (*Norgart*, at p. 397.) An exception to this rule is the discovery rule. (*Ibid.*)

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."

10

(*Norgart, supra,* 21 Cal.4th at p. 397.) "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him [citation], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding [citation].'" (*Id.* at pp. 397-398, quoting *Jolly, supra,* 44 Cal.3d at p. 1103.) "He has reason to suspect when he has "'"notice or information of circumstances to put a reasonable person *on inquiry*"'"' [citation]; he need not know the 'specific "facts" necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place . . . ." (*Norgart,* at p. 398.)

"A close cousin of the discovery rule is the 'well accepted principle . . . of fraudulent concealment.' [Citation.] 'It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.'" (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931.)

Here, SPNA met its burden of establishing plaintiff was on inquiry notice in 2016 that its leases were improperly transferred to another dealer and that this improper transfer was reflected in SPNA's internal database. Indeed, in July 2016, SPNA told plaintiff there were duplicate accounts for some homes for both plaintiff and another dealer. Plaintiff accordingly knew or should have known in 2016 that another dealer was installing SPNA's equipment at the 11 disputed locations. This is

11

particularly so because plaintiff does not suggest it continued to install any of the systems and only complains that its leases were cancelled. Once plaintiff had suspicion of wrongdoing "and therefore an incentive to sue, [it had to] decide whether to file suit or sit on [its] rights." (*Jolly*, *supra*, 44 Cal.3d at p. 1111.) "So long as a suspicion [existed plaintiff had to] go find the facts [and could not] wait for the facts to find [it]." (*Ibid.*)

Plaintiff concedes it knew something was wrong in 2016 but contends it did not discover SPNA's involvement in "the theft of the leases" until 2019 when Shaffer looked at Google Earth and saw an SPNA system installed at one of plaintiff's former lease holders. According to plaintiff, the systems could not be observed at an earlier time because "they are on roofs and behind structures." This evidence does not raise any triable issue of material fact. As the trial court properly noted, the Google Earth images did not provide any new information as to SPNA's liability that could not have been known in 2016. In 2016, plaintiff was aware the leases had been transferred to another dealer. Shaffer's observation of SPNA's systems via Google Earth in 2019 does not suggest plaintiff discovered any new facts with respect to SPNA's involvement or liability. We also note plaintiff sued Chong and the other dealer in 2017. "'[F]ailure to discover, or have reason to discover, the identity of [other] defendant[s] does not postpone the accrual of a cause of action.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) "[T]he rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the

12

wrongdoers." (*Bernson v. Browning-Ferris Industries, supra*, 7 Cal.4th at p. 932.)

Plaintiff next argues the limitations period should be tolled because there was evidence SPNA closed its partner portal after plaintiff's leases were cancelled and concealed its involvement. Plaintiff appears to rely on Shaffer's declaration where he testified about Girling's statement in 2016 that he would never give a system to a third party and his admonition to Chong that SPNA did not allow sales representatives to sell leases from one dealer to another. Plaintiff claims the trial court improperly weighed this evidence and judged Shaffer's character. We are not persuaded by plaintiff's tolling argument. "[T]he doctrine of fraudulent concealment for tolling the [limitations period] "'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'"" (*MGA Entertainment, Inc. v. Mattel, Inc.* (2019) 41 Cal.App.5th 554, 561.) Plaintiff was on inquiry notice in 2016.

Plaintiff further claims the court improperly assumed the systems were installed by another dealer in 2016 when they may have been installed in 2019. Assuming the systems were installed in 2019, plaintiff argues its claims would not have accrued until then. Plaintiff forfeited this argument because it did not raise it in its opposition to the motion for summary adjudication. (*Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 155 ["[A]rguments not raised in summary judgment proceedings" are forfeited].) Plaintiff's argument also is inconsistent with its assertion that Google Earth shows three-year-old satellite images. If the latter is true, the systems would have been installed three years before plaintiff viewed them in 2019.

13

Finally, plaintiff does not discuss the trial court's holding that causes of action based on plaintiff's work to remedy electrical production shortfalls due to Chong's "shading value fraud" were time-barred. We accordingly need not address this portion of the court's holding.

For the foregoing reasons, the trial court correctly held plaintiff's claims were time-barred because plaintiff did not assert the claims until 2020—after the limitations period had expired in 2017.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

GOETHALS, ACTING P. J.

MOTOIKE, J.

14